IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTOPHER B.,[1]

        Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Case No. 1:22-cv-1332-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

      Plaintiff Christopher B. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is affirmed, and this case is dismissed.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND

Born in June 1983, plaintiff alleges disability as of March 1, 2020, due to nerve damage to his leg, gout, bipolar disorder, high blood pressure, anxiety, and depression. Tr.15, 201, 252. His applications were denied initially and upon reconsideration. Tr. 62, 63, 114, 116. On June 6, 2021, a hearing was held before Administrative Law Judge ("ALJ") John Sullivan, wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 34-61. On June 17, 2021, the ALJ issued a decision finding plaintiff not disabled. Tr. 12-33. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since March 1, 2020, the alleged onset date. Tr. 15. At step two, the ALJ determined the following impairments were medically determinable and severe: "Sciatic neuropathy, peripheral neuropath, bilateral avascular necrosis of the hips, obesity, depression, and bipolar disorder." Tr. 18. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 16.

Because he did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform light work as defined by 20 C.F.R. §§ 414.1567(b), 416.967(b) except that:

> he can stand and/or walk, in combination, for no more than two hours and sit for up to six hours in an eight-hour-workday. He can occasionally stoop, kneel, and climb ramps and stairs, but can never crawl, crouch, or climb ladders, ropes, or scaffolds. He must avoid unprotected heights or moving, mechanical parts. He can understand, remember, and carry out simple, routine tasks with a reasoning level of 2 or less. He can make simple work-related decisions. He can have occasional

Page 2 – OPINION AND ORDER

      interaction with supervisors, co-workers, and the general public. The claimant would be off-task less than 5% of the workday.

Tr. 20.

At step four, the ALJ determined plaintiff was unable to perform any past relevant work. Tr. 25. At step five, the ALJ concluded there were a significant number of jobs in the national economy that plaintiff could perform despite his impairments, such as inspector packer, electronic worker, and assembler of small parts. Tr. 26-27.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) discrediting his subjective symptom statements, and (2) improperly rejecting the medical source opinion from plaintiff's primary care provider, Dr. Timothy A. Gallagher, M.D. Pl. Br., ECF No. 16 at 6-7.

**I.    Plaintiff's Testimony**

Plaintiff contends the ALJ erred by discrediting his testimony concerning the extent of his left leg impairment and inability to complete simple, routine tasks. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir.

1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At the hearing, plaintiff testified he had a motorcycle accident on May 25, 2019. Tr. 39. The accident resulted in broken ribs, spinal fractures, and a ruptured hamstring. *Id.* After his surgery the nerve conduction study showed "severe sciatic le[s]ion." *Id.* He is unable to plantar flex or dorsiflex his left foot and must wear a brace. *Id.* He has peripheral neuropathy in both feet, has avascular necrosis in both hips, and problems with both knees. *Id.*, Tr. 41. Plaintiff testified that since his accident and ruptured hamstring surgery he has a burning and itching feeling ranging from his feet to the back of his buttocks. Tr. 44. He is unable to move or feel his left foot. Tr. 45. His discomfort averages "around seven and eight" on a scale of one to ten. Tr. 46. Walking and sitting cause discomfort. Tr. 49. He can sit for up to thirty minutes before moving. *Id.* Bending is difficult because his hips hurt and his foot does not bend. Tr.51. Walking on stairs is difficult because his foot does not bend. *Id.* He can carry twenty-five pounds up to twenty feet. Tr.52-53. Pain interferes with his focus and concentration. Tr. 53. He is unable to focus for two hours at a time. *Id.*

Plaintiff also submitted a written function report, noting he has no feeling in his foot, no balance, and that he is unable to get in and out of equipment safely. Tr. 264. He cannot stand for long periods of time. Tr. 266. Household chores cause him pain. Tr. 267. He is limited in his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, and get along with others. Tr. 269. He can walk fifty yards before needing to rest. *Id.* He relies on crutches, a brace, and a wheeled scooter. Tr. 270. His medications cause nausea, fatigue, irritability, and dizziness. *Id.* His pain and anxiety have increased since his injury. Tr. 276.

After summarizing his hearing testimony, the ALJ determined plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 21-22. In particular, the ALJ discounted plaintiff's testimony because it conflicted with objective medical evidence, and his reported daily activities.[2] Tr. 21-22.

A.   *Objective Medical Evidence*

The ALJ is instructed to evaluate objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your

---

[2] The parties also dispute whether the ALJ erred by discounting plaintiff's testimony about his physical limitations because his treatment was "conservative." Pl. Br. at 13, Def. Br. at 6-7. Their disagreement is beside the point, however, because the ALJ did not rely on this basis when evaluating plaintiff's physical symptom testimony. *See* Tr. 23 (summarizing plaintiff's treatment for physical symptoms--noting the significant prescription drug regimen, surgery, and "also…other conservative treatment" but not relying on this fact as a basis to discount plaintiff's testimony). Because the Court reviews only "the reasons the ALJ asserts," *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), it will not analyze this point except to note that any error would have been harmless because the ALJ identified two other clear and convincing reasons to discount plaintiff's testimony.

symptoms[.]"). Indeed, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt*, 53 F.4th at 498 (emphasis in original); s*ee also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). A claimant's failure to report symptoms to providers is another valid basis to find a claimant's symptom allegations unreliable. *Greger v. Barnhart*, 464 F.3d 968, 972-73 (9th Cir. 2006).

The ALJ reasonably discounted aspects of plaintiff's allegations about his physical limitations as inconsistent with the record. Conflict with objective medical evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. § 416.929(c)(2). Initially, the ALJ acknowledged that plaintiff's left leg and hip issues following his dirt bike accident and June 2019 hamstring surgery limit him to only light work with several postural and exertional limitations. Tr. 20, 22. At the hearing, however, plaintiff testified that his left leg and hip issues limited him even further. For example, plaintiff told the ALJ that he has no feeling in his left foot, has burning sensations in both lower extremities, he could not walk more than one block, sit for more than 30 minutes, and needed to lay down two to three times a day, and elevate his legs. Tr. 45, 49. The ALJ contrasted these allegations with evidence of physical examinations that showed plaintiff has full motor strength of the right leg, an ability to move all extremities purposefully, normal hip flexion and down-going plantar reflexes, normal coordination, good flexibility of the left hamstring and knee, "excellent" strength with left quadriceps and hamstring flexion, no extremity edema, and well-perfused legs. Tr. 22 (citing Tr. 335, 597-98, 777-79, 1034, 1087, 1136, 1200. The ALJ recognized that, even after surgery,

MRIs and X-rays continued to show necrosis and neuropathy in plaintiff's lower extremities,[3] but concluded that these objective data supported only some (not all) of plaintiff's alleged limitations. Tr. 22. It was reasonable for the ALJ to rely on the results from plaintiff's physical examinations to discount certain aspects of his symptom testimony that conflicted with the RFC, and substantial evidence supported the ALJ's decision to do so.

    B.    *Daily Activities*

The ALJ also discounted plaintiff's subjective symptom testimony because it was inconsistent with his daily activities. Tr. 19, 24. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021).

The ALJ reasonably concluded that several of plaintiff's daily activities conflicted with his testimony about the extent to which his lower extremity issues limit his ability to work. To discount a plaintiff's testimony, and ALJ must cite daily activities that "meet the threshold for transferable

---

[3] Plaintiff contends that this and other evidence in the record supports his testimony and should nullify the ALJ's conclusion. *See, e.g.,* Pl. Br. at 9-10. That is one reasonable interpretation of the evidence, but it is not the only one, nor is it the ALJ's. Because this Court is constrained to accept the ALJ's conclusion as long as it is supported by substantial evidence, the Court declines plaintiff's invitation to reweigh the evidence in his favor. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld.").

work skills" or "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639. The ALJ juxtaposed plaintiff's testimony about, for example, his inability to walk further than fifty yards or inability to do any hobbies since his injury (tr. 268-69) with evidence that he can prepare simple meals, do household chores like yard work, care for his dogs, spend time with his family, drive, and manage his finances. Tr. 24 (citing Tr. 386-89, 612-13). The record further shows that plaintiff went to the gym daily in December 2019, could bike for five miles, and started snowmobiling in March 2020. Tr. 772, 868-69,1136. These activities suggest a higher level of functioning than plaintiff alleged. For example, at the hearing plaintiff testified his hip impairments prevented him from walking more than one block or sitting for more than 30 minutes (tr. 63-64), but the mobility and activity levels the ALJ identified from elsewhere in the record belie these allegations. Tr. 24. Plaintiff disagrees, again asking the Court to weigh the evidence differently than the ALJ. Pl. Br. at 14. As noted above, that is beyond the scope of review. *Ahearn*, 988 F.3d at 1115. This was another clear and convincing reason for the ALJ to rely upon to discount plaintiff's testimony regarding the extent of his physical symptoms.

**II.     Medical Opinion Evidence**

For disability claims filed on or after March 27, 2017, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a). The 2017 regulations eliminated the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the 2017 regulations, the ALJ primarily considers the "supportability" and

"consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support their opinions. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2-3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(b). The court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

Dr. Timothy Gallagher, M.D., provided two medical source opinion statements in connection with this case, one on September 9, 2020, and one on May 21, 2021. Tr. 1120- 23, 1244-1247. In both statements, Dr. Gallagher opined that plaintiff would be off task more than twenty-five percent of the time, absent more than four days per month, and was incapable of even "low stress" work. *Id.* In the most recent statement, he explained that plaintiff's chronic hip

pain is worse with standing, walking and even sitting, and that the pain was now constant. Tr. 1244. In the earlier statement, he explained that plaintiff's left leg pain starts in his left buttock and goes all the way down to his foot. Tr. 1120. In the earlier statement, he opined that plaintiff could sit for one hour at a time and less than two hours in an eight-hour workday. Tr. 1121. In the most recent statement, he reiterated his opinion that plaintiff could sit, and stand or walk less than two hours each in an eight-hour workday. Tr. 1246. In both statements, Dr. Gallagher opined that plaintiff must shift positions at will and have a period of walking. Tr. 1121, 1246.

The ALJ found Dr. Gallagher's opinions unpersuasive. Tr. 25. He rejected the "extreme limitations" as "not supported by the normal physical examination findings" or plaintiff's "high level" of reported activity. Tr. 25.

The ALJ sufficiently considered both the supportability and consistency of Dr. Gallagher's opinion. The supportability factor looks to the relevant objective medical evidence—that is, clinical signs and diagnostic findings, see 20 C.F.R. §§ 404.1502(c), (f), (g)—and the supporting explanations provided by a medical source for their opinions. 20 C.F.R. § 404.1520c(c)(1). "An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation" when evaluating a medical opinion. *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020). The consistency factor requires an ALJ to evaluate an opinion's persuasiveness in relation to its consistency with evidence from other sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); *Woods*, 32 F.4th at 792.

In terms of supportability, the ALJ noted that despite Dr. Gallagher's treating relationship with plaintiff, he did not cite any specific objective medical evidence to support the extreme limitations in his opinions. Tr. 25. In fact, as the ALJ pointed out, many of plaintiff's medical records documented normal strength and flexibility. *See, e.g.,* 335, 597-98; *cf* Tr. 1120 (noting

Page 10 – OPINION AND ORDER

"no rhyme or reason" to explain plaintiff's hip pain). Moreover, in terms of consistency, the ALJ found Dr. Gallagher's opinions about plaintiff's extreme lower-body limitations conflicted with State agency medical consultants' findings that plaintiff was capable of light work. Tr. 71-73, 96-98. The ALJ also noted that several of Dr. Gallagher's opinions were inconsistent with plaintiff's reported level of activity, noting his ability to go to the gym daily, do yard work and other chores, and manage his finances. Tr. 25, 772, 868-69, 1136. Plaintiff argues this evidence does not undermine Dr. Gallagher's conclusions about physical limitations. Pl. Br., at 16-17. But these arguments are an effort to have the Court assign its own weight to the evidence, and adopt a competing inference from it, which is beyond the scope of review. *Ahearn*, 988 F.3d at 1115 ("We may not reweigh the evidence or substitute our judgment for that of the ALJ."). Because the ALJ reasonably considered the supportability and consistency of Dr. Gallagher's opinions, and the ALJ's conclusion and inferences were supported by substantial evidence, the Court will not disturb the ALJ's finding that Dr. Gallagher's opinions were unpersuasive.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 6th day of May, 2024.

_____/s/ Jolie A. Russo_____<br>
Jolie A. Russo<br>
United States Magistrate Judge